UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTOINE ALPHONSE, JR.,

    Plaintiff,

v.                                                    Case No. 22-cv-125

ANTHONY MEDINA, *et al.*,

    Defendants.

### ORDER

Plaintiff Antoine Alphonse, Jr., who is representing himself and currently confined at the Wisconsin Secure Program Facility, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Alphonse was allowed to proceed on a Fourteenth Amendment conditions of confinement claim against defendant Anthony Medina for failing to remove him from a cell flooding with feces. Alphonse was also allowed to proceed on a claim against Milwaukee County pursuant to *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). The defendants filed a motion for summary judgment. (ECF No. 51.) The motion is fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment.

**PRELIMINARY MATTERS**

The defendants argue that Alphonse failed to respond to their requests for admission, so the court should deem them admitted under Federal Rule of Civil Procedure 36(a)(3)(b). However, the court finds this unnecessary. As discussed below, even when accepting the facts in a light most favorable to Alphonse based off his declarations filed in support of his response to the defendants' motion for summary judgment, the court finds that no reasonable factfinder could conclude that the defendants violated Alphonse's constitutional rights.

**FACTS**

On January 18, 2022, Alphonse was assigned to Cell 10 on Pod 3C at the Milwaukee County Jail. (ECF No. 53, ¶ 6.) Within two hours of moving into the cell, Alphonse awoke from a nap to find his cell flooding with tissue and feces. (*Id.*, ¶ 9.) Alphonse used a blanket to make a path to the call button to alert Medina that his cell was flooding and he needed out of the cell. (*Id.*, ¶ 13.) Alphonse states that Medina refused to let him out of his cell, even though he was allowing other prisoners out of their cells. (ECF No. 63 at 5.) Medina asserts that several prisoners' cells were flooding, and they all were asking to be released from their cells. (ECF No. 53, ¶ 15.) Because of safety and security concerns, Medina could not let all the prisoners out at once. (*Id.*, ¶¶ 22, 36.)

Medina also did not have the ability to stop the flooding and needed to wait for the plumber to come and fix the situation. (ECF No. 53, ¶ 18.) Medina states that he checked on all the prisoners and instructed them to protect their belongings. (*Id.*, ¶

2

19.) Alphonse states that Medina was ignoring all the prisoners and did not check in on them. (ECF No. 63 at 3.) Alphonse went to sit on his bunk until the flood issue was resolved. (ECF No. 53, ¶ 25.) A few hours later, it is unclear from the record exactly when, a plumber came and fixed the issue. (*Id.*, ¶ 31.) Three hours after the flooding began, the bio-hazard team, which is composed of prisoners, came to clean up after the flood. (*Id.*, ¶ 32.) The team used disinfectant, bleach, and machines to clean up the cells. (*Id.*, ¶ 34.)

For safety and security reasons, prisoners were removed from their cell one at a time to allow the bio-hazard team to clean the cell. (ECF No. 53, ¶ 36.) At one point, at approximately 3:25 p.m., one of the bio-hazard team members got in a fight with a prisoner on Pod 3C. (*Id.*, ¶ 37.) This delayed the cleaning process. (*Id.*, ¶ 38) Eventually, at 4:03 p.m., Alphonse was removed from his cell and the team cleaned it. (*Id.*, ¶ 39.) Once the bio-hazard team was finished, Alphonse told them that there were areas that needed to be cleaned again, which they promptly did. (*Id.*, ¶ 46.)

The next day, Alphonse was still dissatisfied with the condition of his cell and requested cleaning supplies. (ECF No. 53, ¶ 48.) While the Jail was running low on disinfectant, Alphonse was given an extra towel, a broom, and spray bottles. (*Id.*, ¶¶ 49, 57.) It is unclear from the record exactly why Alphonse was still dissatisfied with the state of his cell; however, he was unhappy that he was not given bleach to clean his cell. (*Id.*, ¶ 54.) Alphonse also asserts that Pod 3C generally smelled bad for days after the flood. (ECF No. 63 at 6.)

Alphonse remained in Cell 10 for an additional four days, and then he was moved to a different cell on in Pod 3C. (ECF No. 53, ¶ 58.) Alphonse alleges that the Jail has a policy of withholding cleaning supplies to prisoners. (ECF No. 15 at 4.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on

4

the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Alphonse claims that the defendants violated his rights by leaving him in a sewage-flooded cell. As a pretrial detainee, Alphonse's rights derive from the Fourteenth Amendment. *See Smith v. Dart*, 803 F. 3d 304, 309 (7th Cir. 2015). To sufficiently prove a conditions of confinement claim as a pretrial detainee, "the plaintiff must prove three elements: (1) the conditions in question are or were objectively serious . . .; (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is 'not rationally related to a legitimate governmental objective . . .or excessive in relation to that purpose." *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Alphonse alleges that Medina purposely kept him in a sewage-flooded cell for several hours. It is well established that a short-term exposure to sewage or feces does not rise to the level of a constitutional violation. *Lindell v. Pollard*, 558 F. Supp.3d 734, 750 (E.D. Wis. Sept. 3, 2021). Where there is "exposure to significant amounts of human feces along with other inhumane conditions, such as lack to access to water, clogged sewage pipes, and exposure to frigid temperatures," then there may be a constitutional violation. (*Id.*) (citing *Taylor v. Rojas*, 592 U.S. 7, 7 (2020)). *See*

5

*also Thomas v. Blackard*, 2 F.4th 716, 720-721 (7th Cir. 2021) (finding a constitutional violation where prisoner was confined in a cell with feces covered walls, no hot water, dead flies in his bed, and a mattress covered in human waste); *Vinning-El v. Long*, 482 F.3d. 923, 924 (7th Cir. 2007) (finding a constitutional violation where prisoner was in a cell for several days with no working sink or toilet and walls smeared with blood and feces).

Here, Alphonse was exposed to sewage for less than 5 hours. He does not allege that he suffered any negative health effects from the exposure, other than the unpleasant experience. His cell was promptly cleaned. He was able to sit on his bed. He was also allowed to have the bio-hazard team reclean parts of his cell and given cleaning supplies to clean it once again on his own. Alphonse does not provide evidence that after both cleanings his cell was left in an objectively unsanitary condition. At most, he asserts that the cell was not cleaned to his preferred standards. There is also no evidence that, other than the flooding, Alphonse was exposed to conditions that would rise to the level of a constitutional violation.

Additionally, there was a legitimate governmental purpose for keeping Alphonse in his flooded cell for a few hours. Medina decided to keep the prisoners in Pod 3C in their cells for safety and security reasons. Allowing too many prisoners out of their cell during a chaotic emergency situation could cause additional dangerous situations. Indeed, a fight still happened despite allowing only one prisoner out of his cell at a time to have the cell cleaned.

No reasonable factfinder could conclude that Medina violated Alphonse's constitutional rights by keeping him in his flooded cell for a few hours while the situation was remedied. Summary judgment is therefore granted in favor of Medina on the conditions of confinement claim.

As to the claim against Milwaukee County under *Monell*, "a municipality cannot be held liable under *Monell* where there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Because, as a matter of law, Medina did not violate Alphonse's constitutional rights, Milwaukee County cannot also be held liable. Summary judgment is granted in Milwaukee County's favor.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment in their favor on the merits, the court does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 29th day of August, 2024.

STEPHEN DRIES
United States Magistrate Judge